# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO.

APPLE CORPS LIMITED AND SUBAFILMS
LIMITED,

                Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Apple Corps Limited and Subafilms Limited ("Plaintiffs") hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods within this district bearing and using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identities and domain names set forth on Schedule "A" hereto (collectively the "Seller IDs and Subject Domain Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action

pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least, the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs and Subject Domain Names. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## **THE PLAINTIFFS**

4.      Plaintiff, Apple Corps Limited ("Apple Corps"), is an incorporated limited company organized under the laws of the United Kingdom with its principal place of business located in London, United Kingdom. Apple Corps is owned by the former members of The Beatles and, where applicable, their successors and its principal activities are the promotion, marketing, and policing of the products and rights of The Beatles, such as merchandising rights and audio and audio-visual content. Apple Corps owns the exclusive right by assignment from The Beatles to all merchandising rights of the Beatles and all other intangible rights in the name "The Beatles."

5.     Plaintiff, Subafilms Limited ("Subafilms"), is an associated company of Apple Corps Limited, with its principal place of business located in London, United Kingdom. Subafilms is owned by Apple Corps, the former members of The Beatles and, where applicable, their successors. Subafilms' principal asset is the rights in respect of the cartoon film made in 1967 called "Yellow Submarine."

6.     Plaintiffs are engaged in the development, manufacture, promotion, distribution, and sale in interstate commerce, throughout the United States, including within this district, of a variety of quality goods, using multiple common law and federally registered trademarks, including those discussed in Paragraphs 17 and 26 below.

7.     Plaintiffs' trademarked goods are advertised, offered for sale, and sold within the State of Florida, including this district. Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiffs' respective branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the United States, including the State of Florida and causing each Plaintiff harm within this jurisdiction.

8.     Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores and websites.

9.     To combat the indivisible harm caused by the combined actions of Defendants, Plaintiffs expend significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet has created an environment that requires companies, such as Plaintiffs, to expend significant resources across a wide spectrum of efforts in

order to protect both consumers and themselves from confusion and the erosion of the goodwill connected to Plaintiffs' respective brands.

## THE DEFENDANTS

10.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via Internet marketplace websites under the Seller IDs or as fully interactive commercial Internet websites under the Subject Domain Names.

11.     Defendants use aliases in connection with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

12.     Defendants are the past and present controlling force behind the sale of products using counterfeits and infringements of Plaintiffs' trademarks as described herein.

13.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods, each using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through, at least, the Internet based e-commerce stores or commercial Internet websites using, at least, the Seller IDs and Subject Domain Names, as well as additional names, e-commerce stores, seller identification aliases, domain names, or websites not yet known to Plaintiffs. Defendants have

purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

14.     Defendants have registered, established or purchased, and maintained their Seller IDs and Subject Domain Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names by providing false and/or misleading information during the registration or maintenance process related to their respective Seller IDs and Subject Domain Names. Many Defendants have registered and/or maintained some of their Seller IDs and Subject Domain Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

15.     Defendants will likely continue to register or acquire new seller identification aliases and domain names, as well as related payment accounts, for the purpose of offering for sale and/or selling goods using counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

16.     Defendants' Seller IDs and Subject Domain Names, associated payment accounts, and any other alias seller identification names and domain names used in connection with the sale of counterfeit and infringing goods using one or more of Plaintiffs' respective trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and trademarks to drive Internet consumer traffic to their e-commerce stores or websites operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Apple Corp's Business and Trademark Rights

17.     Apple Corps is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 018 – Wallets.<br><br>IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Musical sound and video recordings; motion picture films featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews of individuals in the music and movie industry, fan interviews, movie and music reviews, drama and fiction; video game software; decorative refrigerator magnets; computer keyboard accessories, namely, mouse pads; phonograph records featuring music, gramophone records featuring music; audio compact discs featuring music; downloadable audio and video recordings featuring music; prerecorded digital versatile compact discs, featuring music, films of musicians, caricatures, cartoons or animation; musical juke boxes; gramophone players; boxes and cases specially adapted for holding gramophone records.<br><br>IC 018 - Luggage, clutch bags, rucksacks, backpacks, umbrellas; bags, namely, handbags, shoulder bags, all-purpose sports bags, carry-on flight bags, suitcases, school bags, satchels, gym bags, tote bags, textile shopping bags. |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | IC 020 - Money boxes not of metal; cushions; pillows; ornaments, statuettes, figurines, trinket boxes and lamps bases made from plastic, resin; key rings, key fobs and key chains, not of metal.<br><br>IC 021 – Beverage glassware; statuettes and figurines of ceramic; plates; drinking vessels, namely, glasses, mugs, jugs, and tankards not of precious metal; bottles, namely, sport bottles sold empty, and vacuum bottles; insulated bottles, namely, thermal insulated bottles and flasks for beverages; cookie jars; coasters other than of paper or of table linen; serving trays not of precious metal; drinking glasses; bottle openers; lunch boxes; shaped cookie cutters; small domestic containers, namely, piggy banks not of metal, salt and pepper shakers, salt and pepper pots not of precious metal; tea cups and saucers; coasters not of paper and other than table linen, namely, coasters made of ceramic tiles for beverages.<br><br>IC 024 - Household linen; bed linen; bed sheets, pillowcases, towels.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, t-shirts, sweatshirts; jackets, coats; scarves; neckties; socks; long-sleeved shirts and long sleeved t-shirts; fleece tops; thermal tops; jerseys; tank tops; swim wear; slippers; cloth babies' bibs. |

The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the classes identified above. True and correct copies of the Certificates of Registration for the BEATLES Marks are attached hereto as Composite Exhibit "1."

18.     The BEATLES Marks have been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The BEATLES Marks have been in use by Apple Corps since long before the Defendants' use of counterfeits of the BEATLES Marks.

19.     The BEATLES Marks are symbols of Apple Corps' quality, reputation and enormous goodwill and have never been abandoned.

20.     The BEATLES Marks are well known and famous. Apple Corps and its licensees expend substantial resources in developing, advertising, and otherwise promoting the BEATLES Marks. The BEATLES Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.     Further, Apple Corps and its licensees extensively use, advertise, and promote the BEATLES Marks in the United States in association with the sale of quality goods. Apple Corps and its licensees expend significant resources promoting the BEATLES Marks and products bearing and/or using the BEATLES Marks on the Internet, and via its official website, www.thebeatlesstore.com. Apple Corps' prominent use of the BEATLES Marks has further enhanced the BEATLES Marks' recognition and fame with members of the consuming public. In the last few years alone, Apple Corps has experienced substantial sales of its high quality goods.

22.     The worldwide popularity of the Beatles musical compositions, musical recordings, and the enormous sales of goods bearing and/or using the Beatles' name, have resulted in the widespread recognition of the "Beatles" brand. As a result of Apple Corps' use, promotion and advertisement of the Beatles brand, members of the consuming public readily identify merchandise bearing or sold using the BEATLES Marks as being quality merchandise sponsored and approved by Apple Corps.

23.     Accordingly, the BEATLES Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved substantial secondary meaning among consumers as identifiers of quality goods.

24.     Apple Corps' has carefully monitored and policed the use of the BEATLES Marks and has never assigned or licensed the BEATLES Marks to any of the Defendants in this matter.

25.     Genuine goods bearing and/or using the BEATLES Marks are widely legitimately advertised, promoted, and offered for sale by Apple Corps, and its authorized licensees, via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Apple Corps' overall marketing and consumer education efforts. Thus, Apple Corps expends significant resources on Internet marketing and consumer education which allow Apple Corps and its authorized licensees to educate consumers fairly and legitimately about the value associated with the BEATLES Marks and the goods sold thereunder.

**Subafilms' Trademark Rights**

26.     Subafilms is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 009 - Musical sound and video recordings; gramophone records featuring music; audio compact discs featuring music; pre-recorded digital versatile discs featuring music; video discs featuring music, musicians, caricatures, cartoons or animation; motion picture films featuring music, musicians, caricatures, |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | cartoons or animation; computer game software; video game software; interactive entertainment software for generating games, puzzles, images, musical entertainment, visual entertainment or movie clips; sunglasses; eyeglass cases; magnets; fridge magnets; mouse pads being accessories for keyboards; telephone apparatus, namely, covers for mobile telephones; straps for mobile telephones; and downloadable sound and video records featuring music, musicians, caricatures, cartoons, animation, movie clips, album art or music memorabilia images provided over broadcast, communications, satellite and computer networks.<br><br>IC 024 - Household linen; bed linen; bedspreads; bed sheets, pillowcases, towels.<br><br>IC 025 - Shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; neck-ties; hats; caps; sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the class also identified above. A true and correct copy of the Certificate of Registration for the YELLOW SUBMARINE Mark is attached hereto as Composite Exhibit "2."

27. The YELLOW SUBMARINE Mark has been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The YELLOW SUBMARINE Mark has been in use by Subafilms since long before the Defendants' use of counterfeits of the YELLOW SUBMARINE Mark.

28.     The YELLOW SUBMARINE Mark is a symbol of Subafilms' quality, reputation and enormous goodwill and has never been abandoned.

29.     The YELLOW SUBMARINE Mark is well known and famous.  Subafilms and its licensees expend significant resources developing, advertising, and otherwise promoting the YELLOW SUBMARINE Mark. The YELLOW SUBMARINE Mark qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

30.     Further, Subafilms and its licensees extensively use, advertise, and promote the YELLOW SUBMARINE Mark in the United States in association with the sale of quality goods. Subafilms and its licensees expends significant resources promoting the YELLOW SUBMARINE Mark and products bearing and/or using the YELLOW SUBMARINE Mark, on the Internet via the website, www.thebeatlesstore.com. Subafilms' prominent use of the YELLOW SUBMARINE Mark has further enhanced the YELLOW SUBMARINE Mark's recognition and fame with members of the consuming public.

31.     As a result of Subafilms' efforts, members of the consuming public readily identify merchandise bearing or sold using the YELLOW SUBMARINE Mark as being quality merchandise sponsored and approved by Subafilms.

32.     Accordingly, the YELLOW SUBMARINE Mark is among the most widely recognized trademarks in the United States, and the trademark has achieved substantial secondary meaning among consumers as an identifier of quality goods.

33.     Subafilms has carefully monitored and policed the use of the YELLOW SUBMARINE Mark and has never assigned or licensed the YELLOW SUBMARINE Mark to any of the Defendants in this matter.

34.     Genuine goods bearing and/or using the YELLOW SUBMARINE Mark are widely legitimately advertised, promoted, and offered for sale by Subafilms through its authorized licensees via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Subafilms' overall marketing and consumer education efforts. Thus, Subafilms expends significant resources on Internet marketing and consumer education which allow Subafilms and its authorized licensees to educate consumers fairly and legitimately about the value associated with the YELLOW SUBMARINE Mark and the goods sold thereunder.

**Defendants' Infringing Activities**

35.     Defendants are each promoting and advertising, distributing, offering for sale, and/or selling goods in interstate commerce using counterfeit and confusingly similar imitations of one or more of the BEATLES Marks and/or YELLOW SUBMARINE Mark (the "Counterfeit Goods") through at least the Internet based e-commerce stores or commercial Internet websites operating under the Seller IDs and Subject Domain Names. Specifically, Defendants are using the BEATLES Marks and/or YELLOW SUBMARINE Mark (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce stores and websites operating under the Seller IDs and Subject Domain Names. Defendants are each using virtually identical copies of one or more of Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

36.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with

the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. Defendants' actions are likely to cause confusion of consumers who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores and websites are genuine goods originating from, associated with, and/or approved by Plaintiffs.

37.     Defendants advertise their e-commerce stores and websites, including their Counterfeit Goods, to the consuming public via at least the e-commerce stores and/or websites under the Seller IDs and Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without authority.

38.     Most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of at least one of Plaintiffs' Marks to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, and (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks.

39.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

40.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

42.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

43.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers into believing there is a connection or association between Plaintiffs' respective, genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit

profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and Subject Domain Names and any other alias e-commerce stores, seller identification names, websites or domain names being used and/or controlled by them.

45.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

46.     Plaintiffs have no adequate remedy at law.

47.     Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

48.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## <u>COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)</u>

49.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

50.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

51.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of Plaintiffs' Marks to advertise, promote, sell, and offer to sell counterfeit and infringing versions of Plaintiffs' branded goods.

52.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

54.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

### COUNT II - FALSE DESIGNATION OF ORIGIN
### PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

56.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

57.     Defendants' Counterfeit Goods bearing, using, offered for sale, and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the internet.

58.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective genuine goods. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

59.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

60.     Defendants have each authorized infringing uses of at least one of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

61.     Additionally, Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results, thereby depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' respective, genuine goods on the World Wide Web and across social media platforms.

62.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     Plaintiffs have no adequate remedy at law. Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if

Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT III - COMMON LAW UNFAIR COMPETITION.**

64. Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

65. This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks that are virtually identical to one or more of Plaintiffs' Marks in violation of Florida's common law of unfair competition.

66. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing counterfeit and infringing versions of Plaintiffs' branded goods. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

67. Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among the consumers as to the origin and quality of Defendants' e-commerce stores and websites as a whole and all products sold therein by their use of Plaintiffs' Marks.

68. Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages because of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

69.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

70.     Plaintiffs are the respective owners of all common law rights in and to their respective Plaintiffs' Marks.

71.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods using at least one or more of Plaintiffs' Marks.

72.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of at least one or more of Plaintiffs' Marks.

73.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods using Plaintiffs' Marks.

74.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury because of Defendants' actions.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing,

advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs respective name or trademarks and from otherwise unfairly competing with Plaintiffs.

b.       Entry of temporary, preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of Plaintiffs' Marks.

c.      Entry of an Order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiffs' request, the Defendants and the top level domain (TLD) Registry for the Subject Domain Names, and any other domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain names, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

e.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction by the Court disable and/or cease facilitating access to the Seller IDs and any other alias e-commerce stores and seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks.

f.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators, administrators, registrars and/or top level domain (TLD) Registry for the Seller IDs and Subject Domain Names who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller ID or Subject Domain Name.

g.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove from the multiple platforms, which include, *inter alia,* a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiffs' request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of Plaintiffs' Marks.

h.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, that, upon Plaintiffs' request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

i.      Entry of an Order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

j.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

k.      Entry of an Order pursuant to15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs and Subject Domain Names or other alias seller identification names and/or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

l.      Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

   m.  Entry of an award of pre-judgment interest on the judgment amount.

   n.  Entry of an Order for any further relief as the Court may deem just and

proper.

DATED: April 11, 2022.   Respectfully submitted,

           STEPHEN M. GAFFIGAN, P.A.

           By: **s/Stephen M. Gaffigan**
           Stephen M. Gaffigan (Fla. Bar No. 025844)
           Virgilio Gigante (Fla. Bar No. 082635)
           T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
           401 East Las Olas Blvd., Suite 130-453
           Ft. Lauderdale, Florida 33301
           Telephone: (954) 767-4819
           E-mail: Stephen@smgpa.net
           E-mail: Leo@smgpa.net
           E-mail: Raquel@smgpa.net
           Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**